[Criminal No. 285.   Filed April 2, 1910.]

[108 Pac. 246.]

## FRANK SCHMIDT, Defendant and Appellant, v. TERRITORY OF ARIZONA, Respondent.

1. GAMING—OFFENSES—GAMES PROHIBITED IN GAMBLING-HOUSES.—Acts of 1909, chapter 92, section 1, prohibits certain games for money by professional gamblers, and section 2 provides that if any proprietor, owner, or part owner, lessee, manager, or any person having management, supervision, or control, temporary or permanent, of any gambling-house or other resort, maintained for gambling, or of any saloon, or of any building in which a saloon may be situate, shall permit any of such games to be played in such place, he shall be guilty of a misdemeanor, etc. *Held*, that the persons to whom section 2 applied were not limited to professional gamblers of the classes enumerated in section 1, but that the prohibition therein applied to all persons in control of the places referred to therein.

2. GAMING—MAINTAINING PLACE FOR GAMING—"GAMBLING-HOUSE."—The words " 'gambling-house' or other resort maintained for gambling," in Acts of 1909, chapter 92, section 2, mean any place where games are played, and not solely a place where games are carried on in the manner prohibited in section 1.

3. GAMING—MAINTAINING PLACE FOR GAMING—EVIDENCE.—Evidence *held* to show defendant was a proprietor of a saloon in which games were permitted in violation of Acts of 1909, chapter 92, section 2.

4. CRIMINAL LAW—TRIAL—REQUESTS FOR INSTRUCTIONS—DEFINITION OF TERMS.—If, in a prosecution under Acts of 1909, chapter 92, section 2, defendant's counsel desired the words "gambling-house, or other resort maintained for gambling," defined to the jury, they should have presented a request therefor in proper form.

5. GAMING—MAINTAINING PLACE FOR GAMING—EVIDENCE OF GAMBLING. In a prosecution under Acts of 1909, chapter 92, section 2, substantial evidence, tending to show that money changed hands among players as the result of a game, shows something won or lost therein, in absence of evidence that the change of possession was not intended to be permanent.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Cochise. Fletcher M. Doan, Judge. Affirmed.

Appellant was indicted for a violation of section 2, chapter 92, Acts of the Twenty-fifth Legislative Assembly, entitled: "An act to prohibit gambling in the territory of Arizona,"

in that he permitted to be played in a room maintained for gambling a game of poker with cards for money.

E. G. Strickler and Neale & Sutter, for Appellant,

John B. Wright, Attorney General, for Respondent.

DOE, J.—Counsel for appellant discuss their several assignments of error under four heads or propositions, the first being: "That section 2 of the act is not violated by merely permitting the playing of the game, but that such game must be carried on in the manner prohibited by section 1."

Sections 1 and 2 of the statute are as follows:

"Section 1. Every person who shall deal, carry on, or open, or cause to be opened, or who shall conduct, either as owner, proprietor, or employee, whether for hire or not, any game of faro, monte, roulette, lasquenet, rouge et noir, rondo, vingt-un or twenty-one, poker, draw poker, stud poker, bluff, fan tan, thaw, seven and one-half, chuck-a-luck, black jack, or any similar game whatsoever played with cards, dice, or any other device, whether the same be played for money, checks, credits, or any other representative of value, within the territory of Arizona, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred dollars, nor more than three hundred dollars, or by imprisonment for not more than six months, or by both such fine and imprisonment."

"Sec. 2. If any proprietor, owner or part owner, lessee, manager or any person having management, supervision or control, temporary or permanent of any gambling-house or other resort maintained for gambling or of any saloon or of any building in which a saloon may be situate shall permit any of the games mentioned in the preceding section to be played in such place, he shall be guilty of a misdemeanor, and upon conviction thereof shall be punished as provided in the preceding section."

It is insisted that these two sections must be construed together, and that, as section 1 is only directed against the carrying on or conducting certain games by enumerated classes of persons, section 2 should be construed as a prohibition against permitting any of. the games in question to be played by the

classes named in section 1 only, and not to prohibit the permitting of their being played by persons not of the enumerated classes. In support of this view the argument is made that the so-called "Duffy Act" was more comprehensive in its restriction than was desired, in that it prohibited almost all kinds of games "in nearly every place where such games are usually played," and that taking into consideration the history of the times when the act was passed, and the evil sought to be remedied, the statute as a whole must be construed as directed solely against the carrying on of such games by professional gamblers; but the rules of construction invoked are only applicable where the statute itself is ambiguous, and we see no ambiguity in those provisions under consideration. The legislature, having by section 1 prohibited the carrying on or dealing of certain games for money by professional gamblers, may well have thought that it was equally contrary to public policy and good morals to permit the playing of such games by anyone in saloons and gambling-houses, and section 2 seems well adapted to effectually accomplish such purposes by prohibiting those having the control of such places from permitting any person to play such games therein. The legislative power in the premises is unquestioned.

Appellant's second proposition is: "That the words 'gambling-house, or other resort maintained for gambling,' in section 2, do not mean any place where games are merely played, but a place where the games are carried on in the manner prohibited by section 1." This proposition is necessarily involved in the first, and has already been considered.

Appellant for his third proposition says that there was "no evidence that defendant was proprietor, owner, part owner, lessee, manager, or had management, supervision, or control of the room." There was, however, ample evidence tending to establish the case of the prosecution upon this point. The testimony showed that appellant was one of the proprietors of the saloon; that the club-room adjoined said saloon, and was conducted with it, and entered from the saloon, and that there was a slide or window in the wall connecting the saloon; that there was a signal operated from the bar to the club-room; that members of the club received their cards entitling them to play from the appellant, and over his bar; that he

sold checks to players, and received the money and cashed them, and that on August 10th he had the bank-roll.

The further objection is made under this proposition that the court, in its instructions, assumed that the room in question was "a gambling-house, or other resort maintained for gambling." The instructions, however, do not warrant this inference, but, we think, fairly submits this, as well as every other issue, to the jury. Had counsel for appellant desired the words in question defined to the jury, they should have presented a request therefor in proper form, and the only instruction requested by them was objectionable as limiting the effect of section 2 to the classes enumerated in section 1.

The fourth proposition advanced is that there was "no evidence that the players contemplated that anything should be won or lost in the game." There was substantial evidence tending to show that money changed hands among the players at the time, as a result of the game. If such change of possession was not intended to be permanent, it would at most be defensive matter, of which no suggestion appears in the evidence.

The record discloses no error, and the judgment is affirmed.

KENT, C. J., and CAMPBELL and LEWIS, JJ., concur.